# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Brigham Oil and Gas, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER FOR REMAND** |
| vs. | ) | |
| | ) | |
| North Dakota Board of University and | ) | Case No. 4:11-cv-058 |
| School Lands, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The Court issues this order to remand the case to permit the North Dakota state courts to decide the important state law issues presented.

## I. BACKGROUND

This lawsuit involves a dispute over mineral rights in and under the "shore zone" of the Missouri River. The "shore zone" is the area between the ordinary high water mark and the ordinary low water mark of navigable rivers. Both the State of North Dakota and numerous riparian landowners along the Missouri River contend they own the mineral rights in and under the "shore zone," and each has issued oil and gas leases concerning the same property. The parties to this lawsuit seek to determine whether the State of North Dakota or the riparian landowners have title to the "shore zone" minerals.

To provide context to the questions presented in this lawsuit, it is appropriate to provide a background concerning historical developments of property interests in navigable riverbeds. The "equal-footing doctrine" and the "public trust doctrine" generally establish title to navigable riverbeds. Under the equal-footing doctrine, "the people of each State, based on principles of

1

sovereignty, 'hold the absolute right to all their navigable water and the soils under them,' subject only to rights surrendered and powers granted by the Constitution to the Federal Government." PPL Montana, LLC v. Montana, 132 S. Ct. 1215, 1227 (2012) (citations omitted). States take title to the land under navigable waters pursuant to the equal-footing doctrine. States, in their sovereign capacity, are free to retain ownership of navigable river beds or "resign to the riparian proprietor rights which properly belong to [the state.]" Barney v. Keokuk, 94 U.S. 324, 338 (1876). However, the public trust doctrine prohibits a state from completely abdicating its interest in navigable waters to private parties in order to preserve important public interests such as commerce, transportation, recreation, and other rights. United Plainsmen Ass'n v. N.D. Water Cons. Com., 247 N.W.2d 457, 460-62 (1976) (citing Ill. Cent. R. Co. v. Illinois, 146 U.S. 387 (1892)). The United States Supreme Court explained the public trust doctrine as follows:

> That the state holds the title to the lands under the navigable waters . . . But it is a title different in character from that which the state holds in land intended for sale. It is different from the title which the United States hold in the public lands which are open to pre-emption and sale  It is a title held in trust for the people of the state, that they may enjoy the navigation of the waters, carry on commerce over them, and have liberty of fishing therein, freed from the obstruction or interference of private parties.

Illinois, 146 U.S. at 452.

Thus, at statehood, North Dakota acquired title to the beds of the navigable rivers up to the ordinary highwater mark pursuant to the equal-footing doctrine. Sprynczynatyk v. Mills, 523 N.W.2d 537, 539 (N.D. 1994). In its sovereign capacity, North Dakota has authority to allocate property interests in navigable riverbeds to riparian landowners. However, the public trust doctrine limits North Dakota from completely abdicating its interest in navigable riverbeds. Id. at 539-40.

In North Dakota, riparian landowners have absolute title to the ordinary highwater mark, and the State owns absolute title to navigable riverbeds up to the ordinary low water mark. However,

2

the state's interests and the riparian landowner's interests "in the shore zone are coexistent and overlap[.]" Mills, 523 N.W.2d at 544. The North Dakota Supreme Court explained co-ownership in the "shore zone" as follows:

> Although a riparian landowner may claim absolute ownership of the land above the ordinary high watermark and the State may claim absolute ownership to the land below the ordinary low watermark via the public trust and equal footing doctrines, those doctrines and N.D.C.C. § 47-01-15 do not contemplate absolute ownership of the shore zone by either party. Both parties have correlative interest in the shore zone. . . . Under the public trust and equal footing doctrines the State has interests in the shore zone, which involve more than a navigable servitude. . . . Under N.D.C.C. § 47-01-15, a riparian owner "takes" more than the mere right of access to the water.

Id. (original citations omitted).[1]

The "shore zone" in North Dakota is clearly co-owned by the State and riparian landowners. However, the North Dakota Supreme Court declined to decide the precise division of ownership in Mills, explaining that the "shore zone presents a complex bundle of correlative, and sometimes conflicting, rights and claims which are better suited for determination as they arise." Id. Ownership of mineral rights in and under the "shore zone" has yet to be determined by the North Dakota Supreme Court.

On June 20, 2011, the plaintiff, Brigham Oil and Gas, filed an amended complaint in state district court in Williams County, North Dakota. See Docket No. 1-1. Brigham Oil and Gas's

---

[1] N.D.C.C. § 47-01-15 provides as follows:

Except when the grant under which the land is held indicates a different intent, <u>the owner of the upland, when it borders on a navigable lake or stream, takes to the edge of the lake or stream at low watermark</u>. All navigable rivers shall remain and be deemed public highways. In all cases when the opposite banks of any stream not navigable belong to different persons, the stream and the bed thereof shall become common to both.

N.D.C.C. § 47-01-15 (emphasis added). The North Dakota Supreme Court interpreted the statute as merely a rule of construction for determining the usual boundary for riparian land, and finding that "takes" indicates that riparian landowners own something less than absolute title to the low water mark of a navigable river. Mills, 523 N.W.2d at 543-44.

complaint brought the interpleader action because "there is a dispute as to who owns the mineral interest between the ordinary high water mark and the ordinary low water mark of the Missouri River." See Docket No. 1-1, p. 8. Brigham Oil and Gas operates an oil well in western North Dakota, and it deposited mineral royalties derived from the oil well with the state court to avoid liability from competing claims over the royalties.

The case was removed to federal district court because the United States holds title to a portion of the mineral rights in Brigham Oil and Gas's well and was named as one of approximately eighty (80) defendants. See Docket Nos. 1 and 32-1. The Government subsequently filed a motion to dismiss based on sovereign immunity. See Docket No. 31. On November 23, 2011, the Court granted the Government's motion to dismiss which terminated the federal government as a party to this action. See Docket No. 40.

On December 2, 2011, Magistrate Judge Charles S. Miller, Jr. issued an order to show cause as to why the federal court should retain jurisdiction. See Docket No. 41. Judge Miller intimated that the Court may no longer have subject matter jurisdiction because the federal government was dismissed from the lawsuit. See Docket No. 39 (cancelling scheduling conference pending the decision on the Government's motion to dismiss "which, if granted, will divest court of jurisdiction."). Only two parties, the City of Williston and Kerry Hoffman, responded to Judge Miller's order to show cause. On January 18, 2012, City of Williston filed a brief requesting that the Court retain jurisdiction over the case. See Docket No. 46. On March 23, 2012, Kerry Hoffman joined the City of Williston in urging the Court to retain jurisdiction. See Docket No. 65.

On March 5, 2012, Kerry Hoffman filed "Defendant Kerry P. Hoffman's Answer to Plaintiff's Amended Complaint, Counterclaims, and Crossclaims." See Docket No. 52. Hoffman alleges that the North Dakota Board of University and School Lands ("Land Board") issued mineral leases for the "shore zone" along his riparian property and the Missouri River. Hoffman contends

4

the Land Board significantly changed its policy concerning the "shore zone" around 2009-10 when it began claiming absolute title up to the high water mark of navigable rivers and began to issue mineral leases for the "shore zone." Hoffman alleges the Land Board's actions amounted to an unlawful "taking" of his property under the due process provisions of the United States Constitution and the North Dakota Constitution, and violated other North Dakota statutes.

On March 22, 2012, the Land Board filed a "Motion by N.D. Board of University & School Lands to Certify Question to N.D. Supreme Court." See Docket No. 63. The Land Board contends that the State's "title to the bed of navigable waters does not stop at the ordinary low watermark, but extends from ordinary high watermark to ordinary high water mark [or to the high water mark on each riverbank]. In other words, the state asserts that it holds fee title to the surface and subsurface estates of the shorezone [sic]." See Docket No. 64, pp. 1-2; cf. Mills, 523 N.W.2d at 544 ("[T]o the extent the trial court held that the State had absolute title to the shore zone and Mills had only riparian rights, we hold that the trial court erred. Neither party has absolute ownership of the shore zone."). The Land Board notes the North Dakota Supreme Court's lack of precedent concerning title to the "shore zone" of navigable rivers, and argues this Court should certify questions to the North Dakota Supreme Court to clarify whether the State of North Dakota or riparian landowners own the mineral rights in the "shore zone" of navigable rivers. On April 6, 2012, Kerry Hoffman filed a responsive brief in opposition to the Land Board's motion. See Docket No. 77. On April 9, 2012, the City of Williston also filed a responsive brief in opposition. See Docket No. 78. On April 12, 2012, the Land Board filed a reply brief. See Docket No. 80.

Several other riparian landowners in North Dakota have apparently initiated lawsuits in state court which also challenge the Land Board's claim to absolute title to minerals under the "shore zone." See Docket No. 64, pp. 3-4. One of the lawsuits seeks class certification concerning a "takings" claim against the State of North Dakota on behalf of riparian landowners on navigable

5

waters throughout the state.

On March 26, 2012, the Land Board filed a motion to dismiss Kerry Hoffman's crossclaims. See Docket No. 69. The Land Board contends the crossclaims should be dismissed because the Court lacks subject matter jurisdiction over certain claims and other claims fail to state a claim upon which relief may be granted. See Docket No. 70. On April 13, 2012, Hoffman filed a responsive brief in opposition. See Docket No. 81. On April 27, 2012, the Land Board filed a reply brief. See Docket No. 85.

## II.  LEGAL DISCUSSION

The Court has a duty to examine whether it should exercise jurisdiction over a claim. Generally, a federal district court must exercise its jurisdiction over claims unless there are "exceptional circumstances" for not doing so. Scottsdale Ins. Co. v. Detco Indus. Inc., 426 F.3d 994, 996 (8th Cir. 2005) (citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16-19 (1983); Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976)).[2] While

---

[2] The Court assumes it has subject matter jurisdiction over the claims presented in this action. The Court likely has jurisdiction pursuant to the federal interpleader statute. 28 U.S.C. § 1335(a). "The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader . . . of the value of $500 or more . . . if (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitle to such money or property . . . ; and if (2) the plaintiff has deposited such money or property . . ." 28 U.S.C. § 1335(a). It is well-established that the phrase "Two or more adverse claimants, of diverse citizenship" has been construed to require only "minimal diversity." State Farm Fire & Cas. Co v. Tashire, 386 U.S. 523, 530 (1967). Minimal diversity is established where only two parties are diverse, without regard to the citizenship of the other parties. Id. The pleadings indicate that several parties reside in North Dakota and several parties reside in other states. Thus, the minimal diversity required under 28 U.S.C. § 1335 is likely established. See Docket No. 12, p. 3 (Sherrie Bakke's listed address in Sandy, Utah); 19-1, p. 3 (Shirley Schwab's address in Peoria, Illinois). 28 U.S.C. § 1335 requires the plaintiff to deposit the property with the federal district court, but Brigham Oil and Gas deposited oil well royalties with the state court of Williams County, North Dakota. The deposit requirement is considered jurisdictional. See Fed. Ins. Co. v. Tyco International Ltd., 422 F.Supp.2d 357, 394 (S.D.N.Y. 2006). However, courts have generally permitted the parties a sufficient opportunity to cure any defect in the deposit prior to dismissal of an interpleader action. Id. There is little doubt that Brigham Oil and Gas, the state court, or the parties in this matter could cause the funds to be deposited in this Court if they wished to maintain jurisdiction with this Court. Further, the oil well royalties satisfy the $500 value requirement in Section 1335. Thus, it is likely that the Court has or would acquire subject matter jurisdiction pursuant to 28 U.S.C. § 1335.

the parties have not challenged the prudence of this Court's jurisdiction, a court may remand a case to state court based on abstention principles when a court is sitting in equity or jurisdiction is otherwise discretionary. Quackenbush v. Allstate Ins. Co, 517 U.S. 706, 721 (1996). Principles of federalism and comity support abstention to permit state courts to first resolve novel and important issues of state law. After reviewing the parties' filings and relevant caselaw, the Court finds that remanding this case back to state court is proper due to the important and unsettled state law issues presented concerning title to minerals underlying the "shore zone" of North Dakota's navigable rivers.

The City of Williston and Kerry Hoffman argue that the Court should exercise jurisdiction because federal law is determinative of the disputes in this lawsuit. See Docket Nos. 46 and 65. The Court disagrees. Title to navigable river beds were "'conferred not by Congress but by the Constitution itself.' . . . It follows that any ensuing question of navigability for determining state riverbed title are governed by federal law." PPL Montana, LLC v. Montana, 132 S. Ct. 1215, 1227 (2012) (quoting Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co., 429 U.S. 363, 374 (1977); citing United States v. Utah, 283 U.S. 64, 75 (1931); United States v. Oregon, 295 U.S. 1, 14 (1935)). The equal-footing doctrine is based on federal law. If the parties disputed whether a particular river or portion thereof was navigable, federal law would be determinative. However, instead of arguing whether the Missouri River is navigable, the parties dispute the title to the minerals in and under the "shore zone," the area between the ordinary high water mark and low water mark, of the Missouri River. This dispute falls squarely within the purview of state law under the public trust doctrine.

---

Assuming the court has original jurisdiction over the interpleader action and without passing judgment on the merits of the Land Board's motion to dismiss, the Court would have supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the counterclaims and crossclaims presented by Kerry Hoffman.

The United States Supreme Court recently made clear that the public trust doctrine is a matter of state law. The Supreme Court described the public trust doctrine in contrast with the equal-footing doctrine as follows:

> The public trust doctrine is of ancient origin. Its roots trace to Roman civil law and its principles can be found in the English common law on public navigation and fishing rights over tidal lands and in the state laws of this country . . . . <u>Unlike the equal-footing doctrine, however, which is the constitutional foundation for the navigability rule of riverbed title, the public trust doctrine remains a matter of state law</u> . . . subject as well to the federal power to regulate vessels and navigation under the Commerce Clause and admiralty power. While equal-footing cases have noted that the State takes title to the navigable waters and their beds in trust for the public . . . the contours of that public trust do not depend upon the Constitution. <u>Under accepted principles of federalism, the States retain residual power to determine the scope of the public trust over waters within their borders while federal law determines riverbed title under the equal-footing doctrine</u>.

<u>PPL Montana</u>, 132 S. Ct. at 1234-35 (citations omitted and emphasis added). State law, subject to federal power to regulate vessels and navigation, determines the scope of the public trust doctrine. Thus, the law of North Dakota controls title to the "shore zone" and would be determinative of the central dispute in this lawsuit.

The Court regularly applies North Dakota law so the fact that state law is determinative would not generally be cause for concern. However, in this case riparian landowners and the Land Board have issued mineral leases to the same "shore zone" along the Missouri River. The North Dakota Supreme Court has previously held that the State's interests and riparian landowners' interests in the "shore zone" are co-existent and overlap, but the court failed to specify the precise division of the title. <u>Mills</u>, 523 N.W.2d at 544. The parties have now asked this Court to determine which party holds title to the "shore zone" minerals, but the unsettled precedent provides little guidance to resolve the issue. This dispute involves important and unsettled issues of state law and the proper interpretation of Section 47-01-15 of the North Dakota Century Code. Any decision concerning ownership of the "shore zone" minerals could potentially impact not just Kerry Hoffman,

but many riparian landowners along navigable rivers in North Dakota. Further, numerous other similar lawsuits have recently been filed in state court. With the unsettled precedent, a real risk exists for contradictory decisions on the same issue in federal court and the state courts.

Under exceptional circumstances, a federal district court may dismiss or remand a matter to state court even though the federal court has jurisdiction. Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996). Federal courts have the power to remand cases based on abstention principles only where the relief sought is equitable or otherwise discretionary. See Id. at 721 ("We have thus held that in cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court.").

In Quackenbush, the United States Supreme Court recounted circumstances where abstention has been historically available:

> We have thus held that federal courts have the power to refrain from hearing cases that would interfere with pending state criminal proceedings, . . . or with certain types of state civil proceedings, . . . cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law, . . . <u>cases raising issues "intimately involved with [the State's] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law</u>, . . . cases whose resolution by a federal court might unnecessarily interfere with a state system for the collection of taxes, . . . and cases which are duplicative of a pending state proceeding[.]

Quackenbush, 517 U.S. at 717 (citations omitted and emphasis added).

The Supreme Court in Quackenbush went on to describe the abstention doctrine established in Burford v. Sun Oil Co., 319 U.S. 315 (1943). In Burford, the dispute concerned the reasonableness of an order by the Texas Railroad Commission that granted a permit to drill oil wells. Id. at 317. Texas state law granted the Railroad Commission jurisdiction to regulate mineral

9

development, and state law also conferred jurisdiction to a single set of state courts to review the Railroad Commission's orders. Id. at 326-27. Nonetheless, prior to Burford, federal courts regularly reviewed the reasonableness of Texas Railroad Commission's orders under due process provisions of the federal constitution and state law. Id. at 317, 326. However, the federal district court declined to exercise jurisdiction to resolve the dispute in Burford. On appeal from that decision, the United States Supreme Court framed the issue as follows, "Assuming that the federal district court had jurisdiction, should it, as a matter of sound equitable discretion, have declined to exercise that jurisdiction?" Id. at 318. The Supreme Court in Burford held that the particular circumstances allowed the district court sitting in equity to abstain from exercising jurisdiction. The Supreme Court highlighted the need for uniform regulation of Texas's oil and gas development, that the state procedure attempted to prohibit multiple review of the Railroad Commission's orders, and the important state interests concerning the development of minerals. Id. at 318-20, 325-26. In addition, the Supreme Court described the detrimental impact of parallel review by federal and state courts which led to contradictory adjudications. Id. at 327-28.

In summarizing the Burford abstention doctrine, the Supreme Court stated:

These cases do not provide a formulaic test for determining when dismissal under Burford is appropriate but they do demonstrate that the power to dismiss under the Burford doctrine, as with other abstention doctrines, . . . derives from the discretion historically enjoyed by courts of equity. They further demonstrate that exercise of this discretion must reflect "principles of federalism and comity." . . . . Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interest in retaining jurisdiction over the dispute and the competing concern for the "independence of state action," . . . that the State's interests are paramount and that a dispute would best be adjudicated in a state forum. . . . This equitable decision balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem,'" . . . and retaining local control over "difficult questions of state law bearing on policy problems of substantial public import," . . . . This balance only rarely favors abstention, and the power to dismiss recognized in Burford represents and "'extraordinary and narrow exception to the duty of the District Court to adjudicate

10

a controversy properly before it.'"

Quackenbush, 517 U.S. at 728-29 (original citations omitted).

A remand of this action to state court based on principles of abstention under Quackenbush and Burford is available because the Court is sitting in equity and supplemental jurisdiction is discretionary. Brigham Oil and Gas initiated an interpleader action. An interpleader action, historically and under 28 U.S.C. § 1335, is an equitable action. See Klaber v. Md. Cas. Co., 934 F.2d 934, 936 (8th Cir. 1934) ("Interpleader is an ancient equitable remedy which recognizes the right of disinterested stakeholder, from whom several persons claim the same thing, debt, or duty, to have the conflicting claimants litigate the matter among themselves without embroiling him in their controversies."); Sanders v. Armour Fertilizer Works, 292 U.S. 190, 199 (1934) ("The interpleader is a suit in equity, and equitable principles and procedure are the same throughout the federal jurisdiction."); 7 Wright, Miller, Kane, Marcus, Fed. Prac. & Proc. Civ. § 1701 (3d. ed.) (describing the history of the interpleader action). Kerry Hoffman has filed counterclaims and crossclaims as well, and the Court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction is discretionary where the claims present novel or complex issues of state law. See 28 U.S. C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - - (1) the claim raises a novel or complex issue of State law[.]"). Therefore, the Court has the discretion to remand this matter to state court because it is sitting in equity and supplemental jurisdiction is discretionary.

The Court expressly finds that state law is determinative of this dispute and current North Dakota Supreme Court precedent provides little guidance in resolving the novel and complex issues presented. The dispute presents important and unsettled questions of law which potentially impact numerous riparian landowners throughout North Dakota. Similar lawsuits have been filed in other state district courts, and remanding the case promotes certainty and uniformity in the interpretation

of state law. Novel and important matters of North Dakota law, like those presented here, should be left to the state courts and, ultimately, the North Dakota Supreme Court to resolve. This dispute presents exceptional circumstances, and the principles of federalism and comity recited in Quackenbush and Burford support abstaining from exercising jurisdiction. The Court finds that abstention is appropriate and warranted in order to allow the state courts of North Dakota and the North Dakota Supreme Court to decide these unsettled issues of state law. In the interests of justice and in the exercise of its discretion, the Court remands the case to the state district court in Williams County, North Dakota.

### III. CONCLUSION

The matter is **REMANDED** to the state district court in Williams County, North Dakota.

**IT IS SO ORDERED**.

Dated this 5th day of June, 2012.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, District Judge
> United States District Court